# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

==========================

## ON MOTION FOR REHEARING

==========================

## NO. 03-99-00846-CV

**Antonio Cortez, Appellant**

**v.**

**Progressive County Mutual Insurance Company, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. 97-05861, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING

We withdraw our original opinion and judgment issued August 10, 2000, and substitute this one in its place. Antonio Cortez appeals from a summary judgment rendered against him in favor of appellee Progressive County Mutual Insurance Co. ("Progressive") in an insurance discrimination case. *See* Tex. Ins. Code Ann. art. 21.21-8 (West Supp. 2001). We will reverse.

## BACKGROUND

In 1996, Cortez purchased a new insurance policy from Progressive through its independent agent, Angel Insurance Group ("Angel"). Angel earned a ten percent commission on the policy—an amount that was passed through to Cortez as a part of his premium. Cortez later

learned that Progressive offers its independent agents a variable commission program in which agents choose how much commission they receive so that policyholders pay a variety of premiums depending upon their agent's commission.[1]

In May 1997, Cortez filed suit "on behalf of himself and those similarly situated," alleging that Progressive's variable commission program violates article 21.21-8 of the Insurance Code "by charging consumers of the same risk a different rate based on the agent's commission level."[2] *See* Tex. Ins. Code Ann. art. 21.21-8. In his first amended original petition, Cortez alleged actual damages "in an amount equal to the difference between the actual commission and a 5% commission [the lowest commission Progressive agents charged]."

Over the next two years, the parties litigated the composition of the class and the scope of discovery. Each side filed a motion for summary judgment. The court denied Progressive's motion and never expressly ruled on Cortez's motion. In August 1999, Progressive filed a second motion for summary judgment, contending that Progressive had not engaged in unfair discrimination

---

[1] Progressive's variable commission plan has three levels from which an agent can choose. If the agent chooses the "Classic" level, the agent will receive a fifteen percent commission on a new policy and twelve percent on the renewal of that policy. At the "Advantage" level, the agent receives ten percent on a new policy and eight percent on renewal. For "Supersaver" policies, agents receive a seven percent initial commission and a five percent renewal commission. Commissions are added to the rate of the policy so that consumers pay varying amounts depending on the commission level the agent elects. Progressive receives the same amount of premium for insureds of the same class and essentially the same hazard regardless of the commission the agent charges.

[2] Because no class certification hearing was held, this appeal is limited to Cortez's individual suit.

and that Cortez had not suffered economic damage. Following a hearing on the motion, the trial court rendered judgment in favor of Progressive. Cortez then filed this appeal.

## DISCUSSION

A party, without presenting summary judgment evidence, may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim on which an adverse party would have the burden of proof at trial. Tex. R. Civ. P. 166a(i). Progressive effectively brought a no-evidence summary judgment, asserting that there was no evidence of either unfair discrimination or economic damages as required under article 21.21-8 of the Insurance Code. *See* Tex. Ins. Code Ann. art. 21.21-8. The trial court, in its order granting summary judgment, concluded that "unfair discrimination," within the meaning of article 21.21-8, is defined by the specific definition found in article 21.21-6 of the Insurance Code,[3] and that Cortez had not shown any probative evidence of unfair discrimination or economic damages. *See id.* arts. 21.21-6, 21.21-8 (West Supp. 2001). Based on these conclusions, the trial court granted Progressive's second motion for summary judgment on the specific grounds raised in Progressive's motion.

Cortez contends that the court erred in (1) addressing the issue of "unfair discrimination" under article 21.21 of the Insurance Code because it is not specifically raised in

---

[3] There are two articles labeled article 21.21-6 in the Texas Insurance Code. We deal here with the article 21.21-6 entitled "Unfair Discrimination."

3

Progressive's summary judgment motion[4] and (2) concluding that the definitions of "unfair discrimination" in articles 21.22-6 and 21.21-8 are the same.[5]

Progressive entitled the third basis in its motion for summary judgment, "Progressive has not engaged in 'unfair discrimination.'" The section notes that "[t]he meaning of 'unfair discrimination' has been a moving target throughout this case"; discusses the type of conduct article 21.21-6 prohibits; claims that "without attempting a precise definition of 'unfair discrimination,' the Progressive variable commission Program is not it"; and asserts that the "difference in its premiums has a completely rational basis, the difference in cost, and is not 'unfair discrimination.'" Progressive

---

[4] Citing *IKB Industries (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997), Cortez also asserts that "findings of fact and conclusions of law do not belong in a summary judgment order." Cortez mischaracterizes that case. In *Pro-Line*, the supreme court addressed whether a party could extend its appellate timetable by requesting findings of fact and conclusions of law after its case was dismissed with prejudice as a sanction for discovery abuse. *See id.* at 440. The court distinguished the situation in *Pro-Line* from that in *Linwood v. NCNB Texas*, 885 S.W.2d 102 (Tex. 1994), wherein the court held that "findings of fact and conclusions of law have no place in a summary judgment *proceeding.*" *Pro-Line*, 938 S.W.2d at 441 (emphasis added) (quoting *Linwood*, 885 S.W.2d at 103). The *Pro-Line* court noted that because a summary judgment involves only those legal issues raised in the motion and response and fact issues, findings and conclusions would serve no purpose and therefore parties could not extend the appellate timetable by requesting such pointless findings. *See id.* at 441-42. However, neither *Linwood* nor *Pro-Line* prohibits a trial court from including a recitation of material facts and construction of material statutes in a summary judgment order. We therefore overrule appellant's first point of error to the extent it claims otherwise.

[5] The following amici curiae join Cortez in support of his position that the trial court erroneously concluded that the definitions of "unfair discrimination" in articles 21.21-6 and 21.21-8 are the same: Mark L. Kincaid; the Office of Public Insurance Council of the State of Texas; and the Texas Department of Insurance.

4

clearly argues that its conduct did not constitute "unfair discrimination" under article 21.21-8. To address this argument, the trial court necessarily had to determine what constitutes "unfair discrimination." We overrule appellant's first point of error to the extent it contends that the meaning of "unfair discrimination" was not raised in Progressive's motion. Having determined that there was no procedural error in the trial court's addressing the meaning of "unfair discrimination," we turn now to the substance of the interpretation, bearing in mind that statutory interpretation is a question of law, which we review *de novo*. *See Lopez v. Texas Workers' Compensation Ins. Fund*, 11 S.W.3d 490, 494 (Tex. App.—Austin 2000, pet. denied).

Our objective when we construe a statute is to determine and give effect to the legislature's intent. *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482, 484 (Tex. 1998); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994). A fundamental rule of statutory construction is that a court should first ascertain the legislature's intent in enacting the statute as expressed in its plain language. *Schorp v. Baptist Mem'l Health Sys.*, 5 S.W.3d 727, 734 (Tex. App.—San Antonio 1999, no pet.) (citing *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex. 1997)). If the disputed statute is clear and unambiguous, extrinsic aids and rules of construction are inappropriate, and the statute should be given its common meaning. *St. Luke's Episcopal Hosp.,* 952 S.W.2d at 505. Courts may not by implication enlarge the meaning of any word in the statute beyond its ordinary meaning. *Sorokolit v. Rhodes*, 889 S.W.2d 239, 241 (Tex. 1994); *Sexton v. Mount Olivet Cemetery Ass'n*, 720 S.W.2d 129, 138 (Tex. App.—Austin 1986, writ ref'd n.r.e.).

The plain language of article 21.21-6 states that "[n]o person shall engage in any art. 21.21-6, § 1. Section three of that article specifically states that "'[u]nfair discrimination' means," among other things, discrimination based on "race, color, religion, or national origin"; "age, gender, marital status, or geographic location of the individual"; or "disability or partial disability." *Id.* art. 21.21-6, § 3. Thus, article 21.21-6 prohibits discrimination based on membership in a certain, protected class.

Article 21.21-8, on the other hand, states that

> No person shall engage in any unfair discrimination by making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premium, policy fees, or rates charged for any policy or contract of insurance or in the benefits payable thereunder, or in any of the terms or conditions of such contract of insurance or in the benefits payable thereunder, or in any of the terms or conditions of such contract, or in any other manner whatever.

*Id*. art. 21.21-8, § 2. Section 3 of article 21.21-8 indicates that a person who has sustained economic damages as a result of another's engaging in unfair discrimination, as defined in Section 2 of that article, may maintain an action against the person or persons engaging in such acts or practices. *Id*. art. 21.21-8, § 3. It is an affirmative defense to the prohibited discrimination if the insurer can show that the discrimination is "based upon sound actuarial principles." *Id*. art. 21.21-8, § 4.

The meaning of a term in different sections of a statute must be considered in the different contexts in which the word is found in the separate sections. *Casas Ford, Inc. v. Ford Motor Co.*, 951 S.W.2d 865, 870 (Tex. App.—Texarkana 1997, writ denied) (citing *Paddock v. Siemoneit*, 218 S.W.2d 428, 435 (Tex. 1949)). A plain reading of articles 21.21-8 and 21.21-6

6

reveals key differences between the meaning of "unfair discrimination" in each article. Unfair discrimination in article 21.21-6 is specifically defined as discrimination based on certain, enumerated classifications such as race, color, religion, national origin, age, gender, marital status, geographic location, and disability. Tex. Ins. Code Ann. art. 21.21-6. Thus, while article 21.21-6 prohibits discrimination based on differential treatment of members of *different classes*, article 21.21-8 prohibits discrimination based on differential treatment between individual members *within the same class*.

Supporting our conclusion that the unfair discrimination in article 21.21-8 differs from that articulated in article 21.21-6 are the internal references in each article to their respective definitions of unfair discrimination. Section 3 of article 21.21-8 references "unfair discrimination, as defined in Section 2 of [that] article." *Id.* art. 21.21-8, § 3. Article 21.21-8's reference to the definition of unfair discrimination in section 2 of that article indicates that article 21.21-8 has its own definition of unfair discrimination, separate from that defined in article 21.21-6. We agree with Cortez that the plain language of article 21.21-8 provides a definition of unfair discrimination and that looking exclusively to article 21.21-6 to define such term would ignore the plain language of article 21.21-8.

In addition to ascertaining the legislature's intent from the plain and common meaning of the words used, we may also consider, among other things, the circumstances under which a statute was enacted, former statutory provisions, including laws on the same or similar subjects, and the consequences of a particular construction. *Kroger Co. v. Keng*, 23 S.W.3d 347, 349 (Tex. 2000). Our plain language interpretation of article 21.21-8 is further supported by construction of former

7

article 21.21, section 4(7)(b) of the Insurance Code, a provision repealed at the same time article 21.21-8 was enacted, with language almost identical to that currently found in article 21.21-8.[6]

Former section 4(7)(b) of article 21.21 prohibited

> any unfair discrimination between individuals of the same class and of essentially the same hazard in the amount of premiums, policy fees, or rates charged for any policy or contract of accident or health insurance or in the benefits payable thereunder, or in any of the terms or conditions of such contract, or in any other manner whatsoever.

The Court of Appeals for the Fifth Circuit interpreted this section and concluded that "in order to prevail on a claim of insurance discrimination, the [plaintiffs] had to show that other individuals of the same class and hazards as them were charged lesser premiums or were given greater benefits." *Hogue v. United Olympic Life Ins. Co.*, 39 F.3d 98, 100 (5th Cir. 1994). The court did not discuss whether the plaintiffs were members of any specific, protected class. Instead, the issue was the treatment of the plaintiffs in comparison to other similarly situated individuals. *See also Reeves v. New York Life Ins. Co.*, 421 S.W.2d 686, 688 (Tex. Civ. App.—Dallas 1967, writ ref'd n.r.e.) (failing to find, in construing section 4(7)(b) of article 21.21, that "any other individual 'of the same class and

---

[6] Article 21.21, section 4(7)(b) was repealed by the 74th Legislature (Act of May 17, 1995, 74th Leg., R.S., ch. 414, sec. 11, § 4(7)(b), 1995 Tex. Gen. Laws 2988, 2998 (since repealed)), the same bill which enacted the current article 21.21-8. *See* Act of May 17, 1995, 74th Leg., R.S., ch. 414, § 16, 1995 Tex. Gen. Laws 2988, 3002 (since codified at Tex. Ins. Code Ann. art. 21.21-8 (West Supp. 2001)). Article 21.21, section 4(7)(b) was almost identical to current article 21.21-8; the only difference is that the repealed section was restricted to accident and health insurance policies, whereas article 21.21-8 contains no such restriction, broadening its applicability to other insurers as well.

of essentially the same hazard' was charged a lesser premium than that charged appellant"). We find the construction of this similar statute instructive.

Nothing in the plain language of article 21.21-8 suggests that unfair discrimination described in that section requires proof that the discrimination was based on a specific classification such as race, color, age, gender, or disability. Because the legislature did not include such a requirement in article 21.21-8, the trial court may not enlarge the meaning of that term. *See Sorokolit*, 889 S.W.2d at 241.

Furthermore, construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, as long as the construction is reasonable and does not contradict the plain language of the statute. *Gene Hamon Ford, Inc. v. David McDavid Nissan, Inc.*, 997 S.W.2d 298, 305 (Tex. App.—Austin 1999, pet. denied) (citing *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993)). As long as the agency's ruling constitutes a reasonable reading of the statute, this Court will affirm if that reading is in harmony with the rest of the statute, even if other reasonable interpretations exist. *Id.* (citing *City of Plano v. Public Util. Comm'n*, 953 S.W.2d 416, 421 (Tex. App.—Austin 1997, no writ)).

The Texas Department of Insurance (the "Department"), headed by the Commissioner of Insurance, is the state agency that regulates the business of insurance in Texas. Tex. Ins. Code Ann. §§ 31.002, 31.021 (West Supp. 2001). The Department, in its amicus brief in support of rehearing, states that "Article 21.21-8 was intended to expand the rule against discrimination between

9

insureds of the same risk class by making it applicable to all insurers, not to restrict the concept of unfair discrimination to the definition contained in Article 21.21-6." The Department further contends that article 21.21-8 is the latest in a long series of Texas statutes designed to prohibit disparate treatment between insureds of essentially the same risk. The Department's interpretation thus also supports our determination that unfair discrimination within the meaning of article 21.21-8 is not defined by article 21.21-6. The trial court below therefore erred in so concluding in its summary judgment order. Article 21.21-8 prohibits unfair discrimination between similarly situated insureds, without regard to whether such insureds belong to a particular group, such as those specified in article 21.21-6.

Having determined the meaning of "unfair discrimination" in article 21.21-8, we now review the propriety of the trial court's grant of summary judgment in favor of Progressive on the ground that Cortez had not shown any probative evidence of unfair discrimination or economic damages under article 21.21-8. A no-evidence summary judgment is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i); *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997), *cert denied*, 118 S. Ct. 1799 (1998). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact, and the legal effect is that there is no evidence. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983). Conversely, more than a scintilla of evidence exists when the evidence supporting

a finding "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). The appellate court must consider all of the evidence in the light most favorable to the party against whom the no-evidence summary judgment was rendered, and every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303-04 (Tex. 1988).

Cortez alleges that Progressive has inherently engaged in unfair discrimination merely by having three different levels of commission rates, thereby enabling its agents to charge similarly situated insureds varying premiums, and that "[p]aying a 10% commission rate for the same coverage, same policy, same company that can be obtained at a 7% commission rate is unfair." Cortez claims that the mere fact that he paid a ten percent commission rate versus a seven percent commission rate evidences both unfair discrimination and economic damages.

In support of his allegations, Cortez adduced some evidence of the following facts. Progressive allows its agents to charge three different commission rates, which leads to insureds being charged three different premiums or rates for insurance. Progressive's underwriting guidelines, however, are the same, regardless of which commission level an agent chooses, and Progressive receives the same amount of premium after commission for any individual risk regardless of the commission level selected by an agent. Progressive admits that "[u]nder Progressive's Alternative Commission Program, it is possible for two individuals of the same class and of essentially the same hazard to be charged different rates based solely on the amount of the commission level."

11

Cortez based his action upon his dealings with Angel, Progressive's agent. Angel, as a matter of business policy, supposedly determined that it could not write insurance at a commission rate of less than ten percent and remain viable. Summary judgment evidence reveals, however, that Angel used a commission rate other than the ten percent Advantage rate in two percent of its insurance underwriting for Progressive, and that, during the time period in which Cortez purchased his policy through Angel, Angel charged the lower, seven percent Supersaver commission rate on at least one occasion. Thus, the record shows that insureds who obtained insurance from Angel paid different amounts of commissions and therefore paid differing premiums. Although a question of material fact remains as to whether any individual who paid the lower, seven percent commission rate was of the same class and essentially the same hazard as Cortez, indulging every reasonable inference in favor of Cortez and taking evidence favorable to him as true, we conclude that Cortez produced at least some probative evidence that Progressive engaged in unfair discrimination by making or permitting unfair discrimination between individuals of the same class and essentially the same hazard in the amount of premiums or rates charged for insurance. The summary judgment based on Progressive's first summary judgment ground, contending that Cortez suffered no "unfair discrimination," was therefore improper, and we consequently reverse the trial court's grant of summary judgment on that point.

## CONCLUSION

We hold that the trial court erred in concluding that unfair discrimination within the meaning of article 21.21-8 is defined by the specific definition in article 21.21-6. Further, because an issue of material fact remains as to whether Progressive engaged in unfair discrimination, we hold

12

that the trial court's grant of summary judgment was improper.  We accordingly reverse the trial

court's grant of summary judgment and remand this cause for further proceedings.

_____

—

Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Reversed and Remanded

Filed:   September 13, 2001

Publish