# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

**NO. 03-03-00183-CV**

---

**Brandon Perez, by and through his next friend, Debra Perez, Individually and on behalf of similarly situated individuals, Appellant**

**v.**

**Blue Cross Blue Shield of Texas, Incorporated, Appellee**

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
NO. GN102756, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING**

---

## O P I N I O N

In this insurance case, we must decide whether articles 21.21-6 and 21.21-8 of the insurance code allow a cause of action for denial of health insurance coverage to an individual with Down Syndrome. Appellant Brandon Perez, by and through his next friend, Debra Perez, individually and on behalf of similarly situated individuals, appeals the district court's grant of summary judgment in favor of appellee Blue Cross Blue Shield of Texas ("BCBSTX" or "Blue Cross"). Perez contends in five issues that the district court erred because (i) although he now has health insurance through another insurance company, his causes of action are not moot; (ii) he has valid claims under articles 21.21-6 and 21.21-8 of the insurance code; (iii) the denial of coverage was

not based on the affirmative defense of "sound actuarial principles"; and (iv) the affidavit of Blue Cross's actuarial expert should have been excluded. For the reasons set forth below, we affirm the order of the district court granting Blue Cross's motion for summary judgment and denying Perez's motions for summary judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The pertinent facts of this case are not in dispute. In August 2000, Debra Perez applied for an individual Blue Cross health insurance policy for herself and her twelve-year-old son, Brandon Perez. She stated on the application that Brandon has Down Syndrome[1] but is "very, very healthy." Blue Cross provided coverage for Debra but excluded Brandon from the policy because of his diagnosis of Down Syndrome. Debra requested reconsideration of the decision, asking why Blue Cross never requested copies of Brandon's medical records or interviewed his doctor. She enclosed with her request a letter from Miguel Ibarra, M.D., Brandon's doctor for ten years, who stated that Brandon did not require any more medical care than any other healthy boy his age. Blue Cross did not reconsider the application. In an internal e-mail some months later, a Blue Cross representative wrote that "[w]e did not request any medical information on Brandon because Down's Syndrome is an automatic decline in our Underwriting Guidelines."

---

[1] Down Syndrome is a "syndrome of mental retardation associated with a variable constellation of abnormalities caused by representation of at least a critical portion of chromosome 21 three times instead of twice in some or all cells," including a broad short skull, rounded small ears, and broad hands with short fingers. *See Stedman's Medical Dictionary* 1386 (5th Lawyer's ed. 1982).

Brandon, through his mother, filed suit in Travis County on behalf of himself and a putative class of all persons denied health insurance "based on a Down Syndrome diagnosis."**²** Perez sought a declaratory judgment that Blue Cross's practice of denying coverage to "healthy persons with Down Syndrome" violates, among other statutes, articles 21.21-6 and 21.21-8 of the insurance code and section 17.46(b)(12) of the deceptive trade practices act (DTPA). *See* Tex. Ins. Code Ann. arts. 21.21-6, -8 (West Supp. 2004); Tex. Bus. & Com. Code Ann. § 17.46(b)(12) (West Supp. 2004).**³** Perez further sought to enjoin Blue Cross from denying health insurance coverage to "individuals diagnosed with Down Syndrome."

Both Perez and Blue Cross filed traditional motions for summary judgment. Perez contended that he was entitled to summary judgment because Blue Cross did not raise the affirmative defense that its decision to deny coverage was based on "sound underwriting or actuarial principles reasonably related to actual or anticipated loss experience." Tex. Ins. Code Ann. art. 21.21-6, § 4(a). Blue Cross raised the affirmative defense in an amended answer and asserted that it was entitled to summary judgment because: Perez's claims were moot because he obtained health insurance through another insurance company; Perez did not have valid causes of action under articles 21.21-6 and 21.21-8 of the insurance code; and the denial of health insurance coverage was justified because

---

**²** Because no class certification hearing was held, this appeal is limited to Perez's individual suit.

**³** Because the substance of the statutes relevant to this case has not changed in recent legislative sessions, for convenience we will refer to the current codes.

it was based on sound underwriting or actuarial principles reasonably related to actual or anticipated loss experience.

Perez then filed a no-evidence motion for summary judgment on the ground that Blue Cross presented no evidence of its affirmative defense, in part because Blue Cross's actuarial expert, Jay Ripps, did not support his conclusions in his affidavit with actuarial data and based his conclusions on "additional materials provided to me by counsel." The district court granted Blue Cross's motion for summary judgment, denied Perez's motions for summary judgment, and overruled Perez's objection to the Ripps affidavit. Perez appeals the grant of summary judgment in favor of Blue Cross, the failure to exclude the Ripps affidavit, and the denial of his own motions for summary judgment.

## ANALYSIS

### *Whether Perez's Claims are Moot*

In his first issue, Perez contends that the district court erred in granting summary judgment because his claims are not moot. Blue Cross argues that this case is moot because Perez has obtained health insurance through another insurer. We disagree with Blue Cross. Under the mootness doctrine, appellate courts may only determine cases in which an actual controversy exists. *See Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988); *University Interscholastic League v. Buchanan*, 848 S.W.2d 298, 304 (Tex. App.—Austin 1992, no writ). In general, a case becomes moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. *See United States Parole Comm'n v. Geraghty*, 445 U.S.

4

388, 396 (1980). Here, Perez retains a legally cognizable interest in the outcome were a court to issue an injunction that Blue Cross discontinue its practice of denying health insurance coverage to people with Down Syndrome. Furthermore, Perez has a live claim for actual damages. Because his causes of action are not moot, we sustain Perez's first issue.

***Admissibility of Blue Cross's Actuarial Expert Witness Affidavit***

In his fifth issue, Perez asserts that the district court erred by failing to exclude the affidavit of Jay Ripps, Blue Cross's actuarial expert witness. Perez contends that Ripps's reliance on "additional materials provided to me by counsel" is improper summary judgment proof because it cannot be readily controverted. *See* Tex. R. Civ. P. 166a(c).

The standard for the admissibility of expert testimony is the same on summary judgment as at trial. *See United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30 (Tex. 1997). In determining whether the testimony is admissible, the trial court does not determine whether the expert's conclusions are correct, but only whether the analysis used to reach the conclusions is reliable. *Gammill v. Jack Williams Chevrolet*, 972 S.W.2d 713, 720 (Tex. 1998). As an appellate court, we do not consider the admissibility or inadmissibility of the evidence *de novo*. Instead, we review the trial court's decision under an abuse of discretion standard, inquiring whether the trial court acted without reference to any guiding rules or principles. *See Longoria*, 938 S.W.2d at 31; *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995).

To constitute competent summary judgment evidence, affidavits must be made on personal knowledge, setting forth such facts as would be admissible in evidence, and must

5

affirmatively show that the affiant is competent to testify to matters stated therein.  Tex. R. Civ. P. 166a(f); *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 122 (Tex. 1996).  Expert testimony must be comprised of more than conclusory statements and must be specific.  *See Wadewitz v. Montgomery*, 951 S.W.2d 464, 466 (Tex. 1997).  Additionally, the expert's affidavit must rest on a reliable foundation.  *Robinson*, 923 S.W.2d at 556-57.

Perez did not contest Ripps's qualifications.  His chief objection was that Ripps relied on unidentified "additional materials" that could not be controverted and were not of the type reasonably relied upon by experts in his field.  Our examination of the affidavit reveals that although Ripps listed "additional materials provided to me by counsel" in his *general* statement of documents upon which he relied, he specifically identified the particular source or sources for each of his opinions.  For example, for his opinion that Down Syndrome leads to associated medical expenses, he identified the affidavits of Golder Wilson, M.D. and Benjamin Carnovale, M.D.  For many other conclusions, he stated that his opinions were "[b]ased on my review of the affidavits of Dr. Benjamin Carnovale, Dr. Golder Wilson, and Mr. David Wilson, and on *Actuarial Standard* and *Actuarial Statement*."  Ripps had previously identified the last two documents in full.  The Actuarial Standard, which "articulate[s] actuarial principles for the actuarial profession in the United States," was based on the Actuarial Statement, which Ripps assisted in drafting when he was chair of the American Academy of Actuaries' Committee on Risk Classification.  We cannot say that these documents were not of the type reasonably relied upon by experts in his field.

"Could have been readily controverted" does not mean that the summary judgment evidence could have been easily and conveniently rebutted, but rather signifies that the testimony

6

could have been effectively countered by opposing evidence. *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex. 1989). That Ripps tied each of his opinions to specific documents gave Perez a sufficient basis on which to present opposing evidence. Accordingly, we do not find that the district court abused its discretion in admitting the Ripps affidavit. We overrule Perez's fifth issue.

### Summary Judgment Standard of Review

Perez's remaining issues pertain to the parties' cross-motions for summary judgment. Blue Cross filed a traditional motion for summary judgment that included an assertion of an affirmative defense, whereas Perez filed both traditional and no-evidence motions. The standards for review of a traditional summary judgment are well established: the movant must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; in deciding whether there is a disputed material fact issue precluding summary judgment, the court must take evidence favorable to the nonmovant as true; and the court must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's favor. *See Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). A defendant moving for summary judgment must disprove at least one essential element of each of the plaintiff's theories of recovery or conclusively establish each element of an affirmative defense to prevail. *See Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999); *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 282 (Tex. 1996). The plaintiff, as nonmovant as to defendant's affirmative defense, does not have any burden of proof unless the

7

defendant proves conclusively all elements of its affirmative defense.  *See Rhone-Poulenc*, 997 S.W.2d at 222-23.

A party seeking a no-evidence summary judgment must assert that no evidence exists as to one or more of the essential elements of the nonmovant's claims on which it would have the burden of proof at trial.  *Holmstrom v. Lee*, 26 S.W.3d 526, 530 (Tex. App.—Austin 2000, no pet.).  Once the movant specifies the elements on which there is no evidence, the burden shifts to the nonmovant to raise a fact issue on the challenged elements.  Tex. R. Civ. P. 166a(i).  The nonmovant is not required to marshal its proof,[4] but it must point out evidence that raises a fact issue.  *Id.* 166a(i) cmt.  To raise a genuine issue of material fact, the nonmovant must set forth more than a scintilla of probative evidence to support each challenged element of the claims on which the nonmovant has the burden of proof at trial.  *See id.* 166a(i); *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997).  If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists.  *Havner*, 953 S.W.2d at 711.  Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of fact, and the legal effect is that there is no evidence.  *Jackson v. Fiesta Mart*, 979 S.W.2d 68, 70 (Tex. App.—Austin 1998, no pet.) (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).  If the nonmovant fails to present evidence raising a genuine issue of material fact as to the challenged element, the trial court must grant the motion.  Tex. R. Civ. P. 166a(i).  A no-evidence summary judgment is essentially a

---

[4] To "marshal one's evidence" means to arrange all of the evidence in the order that it will be presented at trial.  *In re Mohawk Rubber Co.*, 982 S.W.2d 494, 498 (Tex. App.—Texarkana 1998, orig. proceeding).

directed verdict granted before trial, to which we apply a legal sufficiency standard of review. *Jackson*, 979 S.W.2d at 70.

Generally, a party cannot appeal the denial of a motion for summary judgment because it is an interlocutory order and thus not appealable. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996). However, when both parties move for summary judgment and the district court grants one motion and denies the other, the unsuccessful party may appeal both the prevailing party's motion and the denial of its own. *See Holmes v. Morales*, 924 S.W.2d 920, 922 (Tex. 1996). We will review the summary judgment evidence presented by both sides, determine all questions presented, and render such judgment as the trial court should have rendered. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997). We are required to consider all summary judgment grounds the trial court ruled on that are preserved for appellate review and are necessary for final disposition of the appeal. *Cates*, 927 S.W.2d at 625-26. In reviewing a summary judgment in which the trial court has not provided the specific basis for its decision, we must review each argument asserted in the motion and affirm the trial court's judgment if any of these arguments is meritorious. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). We review the trial court's decision to grant summary judgment *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994).

### *Cause of Action under Article 21.21-6 of the Insurance Code*

In his third issue, Perez asserts that he has a valid cause of action under article 21.21-6 of the insurance code. Tex. Ins. Code Ann. art. 21.21-6. Although Perez agrees with Blue Cross

that article 21.21-6 does not provide for a private right of action because only the insurance commissioner may assess penalties under this provision, *see id.* § 5(a), he nevertheless contends that he may assert a claim under article 21.21-6 by way of insurance code article 21.21-8 and the DTPA "laundry list." *See id.* art. 21.21-8; Tex. Bus. & Com. Code Ann. § 17.46(b) (West Supp. 2004). This requires us to apply principles of statutory construction.

Statutory construction is a question of law, which we review *de novo*. *Texas Dep't of Transp. v. Needham*, 82 S.W.3d 314, 318 (Tex. 2002). We must ascertain and give effect to the legislature's intent for the provision we are construing. *See Fleming Foods v. Rylander*, 6 S.W.3d 278, 284 (Tex. 1999); *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1994); *Calvert v. Texas Pipe Line Co.*, 517 S.W.2d 777, 780 (Tex. 1974). The legislature's intent should be determined by reading the language used in the particular statute and construing the statute in its entirety. *See In re Bay Area Citizens Against Lawsuit Abuse*, 982 S.W.2d 371, 380 (Tex. 1998); *Taylor v. Firemen's & Policemen's Civil Serv. Comm'n*, 616 S.W.2d 187, 190 (Tex. 1981). Further, we should read every word, phrase, and expression in a statute as if it were deliberately chosen, and presume the words excluded from the statute are done so purposefully. *See Gables Realty Ltd. P'ship v. Travis Cent. Appraisal Dist.*, 81 S.W.3d 869, 873 (Tex. App.—Austin 2002, pet. denied); *City of Austin v. Quick*, 930 S.W.2d 678, 687 (Tex. App.—Austin 1996) (citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)), *aff'd*, 7 S.W.3d 109 (Tex. 1999); *see also* 2A Norman J. Singer, *Sutherland Statutory Construction* § 47.25 (6th ed. 2000) (stating that there is generally an inference that omissions from a statute are intentional).

Article 21.21-6 does not on its face provide a private cause of action. *See* Tex. Ins. Code. Ann. art. 21.21-6. Unlike article 21.21-8, article 21.21-6 is silent on the availability of a private civil remedy for an alleged violation. *Compare id. with id.* art. 21.21-8. Section five of article 21.21-6 addresses remedies for its violation, speaking only to administrative remedies that the insurance commissioner may pursue: "any legal entity . . . found to be in violation . . . is subject to the sanctions authorized by Chapter 82 of this code or administrative penalties authorized by Chapter 84 of this code. The commissioner may also utilize the cease and desist procedures authorized by Chapter 83 of this code." *Id.* art. 21.21-6, § 5.

By analogy, article 21.21-2 of the insurance code, prohibiting unfair claim settlement practices, also does not explicitly provide for a private cause of action; instead, it outlines detailed administrative remedies that the commissioner may pursue. *See id.* art. 21.21-2 (West Supp. 2004). The supreme court has held that article 21.21-2 does not create a private cause of action for violations of that article. *Allstate Ins. Co. v. Watson*, 876 S.W.2d 145, 148-49 (Tex. 1994); *see also American Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 847 n.11 (Tex. 1994) (Article 21.21-2 is "subject to enforcement only by the State Board of Insurance."). The reasoning of *Allstate* applies because article 21.21-6, while not spelling out specific administrative remedies, incorporates remedies set forth in chapters 82, 83, and 84 of the insurance code. Tex. Ins. Code Ann. art. 21.21-6, § 5(a). Thus, we rely on *Allstate* to hold that there is no private cause of action available under article 21.21-6.

We now turn to our examination of article 21.21-6 and its relationship with article 21.21-8. Under article 21.21-6, entitled "Unfair Discrimination," "[n]o person shall engage in any

11

practice of unfair discrimination which is defined in this article or is determined pursuant to this article to be a practice of unfair discrimination in the business of insurance." *Id.* § 1. Unfair discrimination includes "refusing to insure . . . because of disability or partial disability." *Id.* § 3(c). Article 21.21-8 provides that "[n]o person shall engage in any unfair discrimination by making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard." *Id.* art. 21.21-8, § 2.

Perez contends that a violation of article 21.21-6 is a violation of article 21.21-8 because (i) both provisions were enacted in the same legislative session and refer to each other; (ii) 21.21-8, being more general, encompasses the more specific article 21.21-6; and (iii) the legislature intended both statutes to address the same types of problems by entitling them both "Unfair Discrimination" and applying both to insurers. Blue Cross disputes that Perez may bring a cause of action under article 21.21-6 and counters that even if Perez may bring a claim under this provision, Blue Cross's decision not to insure was not a violation because it was "based upon sound underwriting or actuarial principles reasonably related to actual or anticipated loss experience." *Id.* art. 21.21-6, § 4(a) (affirmative defense to allegation of unfair discrimination).

As to Perez's first argument, the provisions do not refer to each other. Without such a cross-reference or some demonstration in the legislative history of an interrelationship, we cannot say that the remedy in article 21.21-8 encompasses that in article 21.21-6 simply because the provisions were enacted in the same legislative session. If anything, the opposite is true because, as discussed below, the statutes offer different remedies. Concerning Perez's second argument, assuming without deciding that article 21.21-8 is more general than article 21.21-6, it is a well-

12

settled principle of statutory construction that a more specific statute controls over a more general one. *See, e.g.*, *Columbia Hosp. Corp. of Houston v. Moore*, 92 S.W.3d 470, 473 & n.19 (Tex. 2003).

As to Perez's third argument, our examination of the statutes and their legislative history does not lead us to conclude that one may bring a private cause of action through article 21.21-6 by way of article 21.21-8. The fact that article 21.21-8 provides for a private cause of action, *see id.* art. 21.21-8, § 3, whereas article 21.21-6 allows only a public remedy, *see id.* art. 21.21-6, § 5, belies the suggestion that one provision encompasses the other. This distinction is borne out by the legislative history. The caption for article 21.21-6, enacted as part of a bill providing public remedies, reads that the act relates "to certain acts of unfair discrimination in the business of insurance . . . providing *administrative remedies*." Act of June 8, 1995, 74th Leg., R.S., ch. 415, § 1, 1995 Tex. Gen. Laws 3005, 3005 (emphasis added). Article 21.21-8 was enacted in a separate chapter containing consumer protection provisions. The caption reads that the act relates "to *civil remedies* for deceptive, unfair, or discriminatory practices." Act of June 8, 1995, 74th Leg., ch. 414, § 18, 1995 Tex. Gen. Laws 2988, 3003 (emphasis added). We are also mindful of our holding that the definitions of "unfair discrimination" in the two provisions are not interchangeable. *See Cortez v. Progressive County Mut. Ins. Co.*, 61 S.W.3d 68, 73 (Tex. App.—Austin 2001), *pet. granted*, *judgm't vacated pursuant to settlement* ("[W]hile article 21.21-6 prohibits discrimination based on differential treatment of members of *different classes*, article 21.21-8 prohibits discrimination based on differential treatment between individual members *within the same class*."). Accordingly, we hold that Perez may not bring a private cause of action under article 21.21-6 by way of article 21.21-8.

Perez also asserts that he may bring a cause of action under article 21.21-6 through the DTPA laundry list. Blue Cross does not contend that the DTPA has no application, only that Perez has no claim under the DTPA because he is not a consumer. A consumer under the DTPA is a person who seeks or acquires goods or services by purchase or lease. *See* Tex. Bus. & Com. Code Ann. § 17.45(4) (West 2002). However, because the record does not demonstrate that Blue Cross presented this argument to the trial court, it is waived for purposes of appeal.

Assuming without deciding that the DTPA does apply, there was no evidence of a DTPA violation: Perez argues that Blue Cross's discrimination violated an "unlisted practice" in the DTPA laundry list. The supreme court has held, however, that although the laundry list is not exclusive for DTPA purposes, it is exclusive for deceptive trade practices claims through article 21.21 of the insurance code. *Watson*, 876 S.W.2d at 149. More importantly, Perez's petition referred specifically and only to section 17.46(b)(12) of the laundry list, which requires evidence of "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." Tex. Bus. & Com. Code Ann. § 17.46(b)(12). There is no evidence that Blue Cross made any such representations. In the application for health insurance, Blue Cross made no promise that it would provide coverage. It instead declared that "This application does not provide coverage of any kind unless approval is provided by Blue Cross and Blue Shield of Texas, Inc." Having found that Perez cannot bring a private cause of action under article 21.21-6 by way of article 21.21-8 and did not present evidence of a DTPA violation, we need not address Blue Cross's contention that it established its affirmative defense as to Perez's article 21.21-6 claim. We overrule Perez's third issue.

14

*Cause of Action under Article 21.21-8 of the Insurance Code*

In his second issue, Perez contends he has a valid cause of action under article 21.21-8. This provision states that "[n]o person shall engage in any unfair discrimination by making or permitting any unfair discrimination between individuals of the same class and of essentially the same hazard." Tex. Ins. Code Ann. art. 21.21-8, § 2. Perez argues that because the relevant class is either "the average person" or "all twelve-year-old boys," Blue Cross engaged in unfair discrimination by refusing to insure someone within the class who has Down Syndrome. Blue Cross counters that Perez may not maintain an action under article 21.21-8 because he did not satisfy the statutory requirement of sustaining economic damages. *See id.* § 3(a). Blue Cross, however, did not raise this argument in the trial court; therefore, we may not consider it.

Blue Cross further contends that refusal to insure does not constitute unfair discrimination under article 21.21-8 because section two of the provision does not include the phrase "refusing to insure." *See id.* § 2. However, under section four, entitled "Affirmative Defenses," an insurance company is not in violation of section two if a "refusal to insure," among other actions, "is based upon sound actuarial principles." *Id.* § 4. Thus, reading sections two and four together, as we must, article 21.21-8 prohibits an insurance company's refusal to insure one person of the "same class and of essentially the same hazard" as another person who receives coverage.

Blue Cross next contends that, because only persons with Down Syndrome constitute "individuals of the same class and of essentially the same hazard," it did not unfairly discriminate in declining to insure all persons within that class. Blue Cross argues in the alternative that it proved as a matter of law that its refusal to insure was based on "sound actuarial principles," an affirmative

15

defense to a claim under article 21.21-8. *Id.* Even assuming that the relevant class is either "the average person" or "all twelve-year-old boys," as Perez proposes, Blue Cross's conduct did not constitute unfair discrimination under article 21.21-8. Unfair discrimination occurs when an insurance company treats a person differently, without justification, than another person not only of the same class but also "*of essentially the same hazard.*" *Id.* § 2 (emphasis added).

Here, both sides presented evidence that a person with Down Syndrome is not of essentially the same hazard as a person without the disability. The affidavit of Golder Wilson, M.D., Perez's medical expert, alone establishes that persons with Down Syndrome have up to a fifty percent incidence of heart problems, seventy percent incidence of vision and hearing deficits, and ninety percent incidence of periodontal disease. He further stated that "over 50 percent of individuals with Down Syndrome have medically uneventful lives," which implies that a large percentage has increased medical risks. The affidavit of Benjamin Carnovale, M.D., Blue Cross's medical expert, establishes that people with Down Syndrome "frequently have a lowered resistance to infection," "are at greater risk from autoimmune diseases," and are more likely to suffer seizures than people without Down Syndrome. With those statistics, we cannot say that a person with Down Syndrome is of essentially the same hazard as a person without the disability.

Therefore, we conclude that Blue Cross's refusal to insure Perez because he has Down Syndrome did not constitute unfair discrimination under article 21.21-8 between individuals of the same class and essentially the same hazard. If the relevant class is all persons, both parties presented sufficient proof that persons with Down Syndrome have greater medical risks than the average person and therefore are not of the same hazard as the average person. If the relevant class

16

is all persons with Down Syndrome, then Blue Cross did not unfairly discriminate because it treated all persons within that class and hazard in the same manner. We overrule Perez's second issue. In light of our disposition of Perez's second and third issues concerning his causes of action under articles 21.21-6 and 21.21-8, we need not address whether Blue Cross's denial of coverage was based on sound actuarial principles. We affirm the order of the district court granting Blue Cross's motion for summary judgment and denying Perez's motions for summary judgment.

## CONCLUSION

Perez's claims are not moot simply because he has since obtained health insurance from another insurance company. He retains a legally cognizable interest, at the least, in his claim for injunctive relief that Blue Cross discontinue the practice of declining to insure people with Down Syndrome. Further, we do not find that the district court abused its discretion in admitting the affidavit of Blue Cross's actuarial expert witness. Although the expert relied generally, in part, on "additional materials provided to me by counsel," he tied each of his opinions to specific documents. We cannot say that the specific documents on which he relied were not of the type reasonably relied upon by experts in his field.

Perez may not maintain a cause of action under article 21.21-6 of the insurance code because (i) the statute provides only for a public remedy; (ii) the statute does not tie in with article 21.21-8 to create a private right of action; and (iii) Perez did not present sufficient proof of a cause of action under the DTPA laundry list by way of article 21.21-6. *See* Tex. Ins. Code Ann. arts. 21.21-6, -8; Tex. Bus. & Com. Code Ann. § 17.46(b). Perez additionally may not maintain a cause

17

of action under article 21.21-8 because Blue Cross's policy of declining to insure all persons with Down Syndrome does not unfairly discriminate between persons of the same class and of essentially the same hazard. *See* Tex. Ins. Code Ann. art. 21.21-8, § 2. For these reasons, we affirm the order of the district court granting Blue Cross's motion for summary judgment and denying Perez's motions for summary judgment.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: December 18, 2003