**Laura Lee REDING, Appellant,**

v.

**Sharon Louise EATON, Appellee.**

**No. 12566.**

Court of Civil Appeals of Texas, Austin.

May 4, 1977.

James B. Morris, III, Grubb & Morris, Houston, for appellant.

Thomas S. Goggan, Goggan & Cain, Austin, for appellee.

SHANNON, Justice.

This will contest was tried before the county court of Travis County. Judgment was entered denying the will to probate upon the basis that the deceased lacked testamentary capacity. We will affirm that judgment.

The will in question was signed by the deceased, Alfred Wesley Eaton, on May 21, 1975. He died on November 8, 1975. At the time of his death Eaton was not married. By a previous marriage the deceased

had two daughters, Laura L. Reding, appellant, and, Sharon Louise Eaton, appellee.

In the instrument offered for probate the deceased devised most of his property to Laura L. Reding and named her executrix.

Upon request, the court filed findings of fact and conclusions of law. The court found on the date of the execution of the instrument offered for probate that the decedent did not have the mental capacity to understand or comprehend the nature and extent of the property owned by him; to know and understand the natural objects of his bounty and their claims on him; and to collect in his mind the elements of the business to be transacted, and to hold those elements in his mind long enough to perceive at least their obvious relation to each other and to be able to form a reasonable judgment as to them. The court concluded that at the time of the execution of the instrument offered for probate the decedent did not have testamentary capacity.

Laura Reding attacks the judgment by four points of error, the first three points being that the court's findings of fact that the deceased lacked testamentary capacity were supported by no evidence or that the findings were so contrary to the great weight and preponderance of the evidence as to be manifestly unjust.

▮ To have testamentary capacity, the testator must have been capable of understanding the business he was about, the nature and extent of his property, the persons to whom he meant to devise and bequeath it, the persons dependent upon his bounty and the mode of distribution among them. He must have had memory sufficient to collect in his mind the elements of the business to be transacted, and to hold them long enough to perceive at least their obvious relation to each other, and to be able to form a reasonable judgment as to them. *Prather v. McClelland*, 76 Tex. 574, 13 S.W. 543 (1890), *Bettis v. Bettis*, 518 S.W.2d 396 (Tex.Civ.App.1975, writ ref'd n. r. e.).

▮ In the spring of 1975 when he was in the hospital, Eaton was visited by his daughter, Laura Reding and her family. Mrs. Reding secured Eaton's release from the hospital. Mrs. Reding and her family then returned her father from the hospital in New Orleans to his home in Walls, Mississippi. Shortly after arriving in Mississippi, and on May 21, 1975, Mrs. Reding and her husband took Eaton to an attorney's office in nearby Hernando where the instrument offered for probate was executed.

Appellee's evidence was that the infirmities of age and sickness had crept over Alfred Wesley Eaton. Eaton, while in the hospital, was unable at first to recognize his daughter, Sharon Eaton, who had come to visit him. During that hospital visit Eaton's mind seemed to wander "back and forth" and he seemed to experience difficulty in conversation in concentrating upon one subject.

Appellee called LaVerne Nix, a neighbor of Eaton's in Walls, Mississippi. Before his surgery, Eaton had boarded with Mrs. Nix. She, as well, had undertaken "to keep an eye on him because his mind wandered and he'd forget things."

In connection with Eaton's lack of memory, Mrs. Nix observed, "He'd forget things like mail. I'd carry him to the mailbox, post office every morning to get his mail, and then later in the day he would come in and ask me to carry him to the post office again. 'I've already taken you.' 'No, you ain't carried me in two or three days,' and I'd carry him again just to get him off of my back because I had things that I needed to do."

Eaton frequently forgot his appointments to see the doctor even though Mrs. Nix had reminded him of the appointment the evening before. He would forget to take his medicine, and would later bring the medicine to Mrs. Nix for her to give it to him. On occasion, Eaton forgot which pocket of his clothing in which he had placed his billfold, and he would ask Mrs. Nix to help him locate the billfold.

Eaton was fond of sports, and would read the sports section of the newspaper. Mrs. Nix would at times ask him "who had won

the ball games." Eaton was unable to remember. He would respond that he would have to read the sports section again. Mrs. Nix testified that Eaton's mind "kind of wandered" in that "He'd say things and then about ten minutes later he would repeat the same thing, tell it again."

Eaton asked Mrs. Nix to tend to paying his bills. He was unable to understand the significance of some of the bills. For example, he could not understand why he had to pay premiums for his automobile or burial insurance. Mrs. Nix would attempt to explain and after several attempts Eaton would tell her "to take of it" for him. Simple banking transactions were beyond Eaton's ken and he would ask Mrs. Nix to attend to those matters.

Mrs. Nix was in Eaton's presence on May 21, 1975, the date of the execution of the instrument offered for probate. She testified that on that date Eaton, at least to a certain extent, did not understand what he was doing. Her testimony was that Eaton on that date did not have sufficient mental ability to understand the effect of his acts in making a will. Likewise, Mrs. Nix did not think that Eaton on that date had the mental capacity to understand the objects of his bounty and the claims they would have on him. She was of the opinion, however, that Eaton probably understood the general nature and extent of his property.

Appellant sought to rebut appellee's evidence of Eaton's lack of testamentary capacity by the testimony of several witnesses. In the main, appellant relied upon the testimony of Henry Reding, Eaton's son-in-law. Reding testified that during the hospital visit by the Reding family, Eaton was able to carry on a conversation and that Eaton realized that he was in a hospital. Eaton recognized him and Laura Reding. Reding claimed Eaton did not seem to have any memory problem and that on the trip from New Orleans to Mississippi, Eaton gave him directions with respect to leaving the freeway to go to Walls. Reding and his wife took Eaton to the attorney's office in Hernando, and at the law office Eaton told the attorney "what he wanted to do."

In a nonjury case the trial court is the judge of the credibility of the witnesses and the weight to be accorded their testimony. *Harrell v. Sunylan Co.*, 128 Tex. 460, 97 S.W.2d 686 (1936). Likewise, wherein there is conflicting testimony, the court in a nonjury case is free to adopt part or all of one witness's testimony and reject the other testimony. We have concluded that the judgment is supported by probative evidence and is not contrary to the great weight and preponderance of the evidence.

■ Twenty-nine days after the entry of the judgment admitting the instrument to probate, appellee filed a motion for new trial which was granted by the county court. The granting of the new trial forms the basis for appellant's fourth point of error. Point four claims that granting of the new trial ". . . was done without good cause shown and was an arbitrary action of the court such as to be an abuse of discretion."

In the motion for new trial, appellee averred that appellant had commenced the probate proceedings without notice to appellee, and that appellee had learned of the proceedings only after the will was admitted to probate. Appellee then alleged that the decedent lacked testamentary capacity at the time of the execution of the will.

Appellee filed her motion for new trial on the twenty-ninth day after the entry of judgment. The court granted the motion on the same day. As the judgment was not final, the court had the power to grant the new trial either on its own motion or on appellee's motion. *Ex parte Godeke*, 163 Tex. 387, 355 S.W.2d 701 (1962). The court did not err in granting the motion for new trial.

The judgment is affirmed.

Affirmed.