# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-07-00123-CV

---

**Mark Seth Tomlinson, Appellant**

**v.**

**The Estate of Jesse Lawhon Theis, Deceased, Appellee**

---

**FROM THE COUNTY COURT OF SCHLEICHER COUNTY,**
**NO. 1638, HONORABLE WILLIAM T. MCGEE, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This is an appeal from a summary judgment in a will contest. Eddie L. Albin and Kim Albin applied to probate the last will of Jesse Lawhon Theis, executed in 2004 (the "2004 will").[1] Appellant Mark Seth Tomlinson filed a contest to the Albins' application and applied to probate an earlier will that Theis had executed in 2000 (the "2000 will"). The issue is whether the trial court erred in granting summary judgment in favor of the 2004 will proponents, Eddie and Kim Albin. On appeal, Tomlinson argues that he had raised genuine issues of material fact by bringing evidence that (1) the 2004 will offered by the Albins was a forgery, (2) Theis lacked testamentary capacity when he executed the 2004 will, and (3) the 2004 will was the result of undue

---

[1] Eddie L. Albin is the independent executor named in the 2004 Last Will and Testament of Jesse Lawhon Theis. Although the record filed in this Court does not indicate that the 2004 will was admitted to probate, the Albins responded as appellees on behalf of the Estate, and the filings of the parties represent that they are entitled to do so.

influence. Because summary judgment was properly granted, we affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

Mark Seth Tomlinson appeals the trial court's order granting the motion for summary judgment of appellees Eddie L. Albin and Kim Albin, proponents of a will that Tomlinson contested below. The Albins applied to probate the will of Jesse L. Theis naming them the primary beneficiaries and appointing Eddie Albin as independent executor of Theis's estate. Tomlinson opposed the application on the grounds that the will offered by the Albins was invalid, that Theis lacked testamentary capacity when he executed the will, and that the will was the result of undue influence. Tomlinson then offered for probate an earlier will that Theis had purportedly executed, wherein Tomlinson was made a beneficiary. The trial court ruled in favor of the Albins, granting them summary judgment on all issues. Tomlinson appealed.

Theis died on March 23, 2006. At the time of his death, he was divorced and unmarried. He never had children of his own, but he apparently remained in contact with his ex-wife's sons, David Savanich and Rodney Savanich. In a will executed April 30, 2000, Theis bequeathed to Tomlinson all of his real property located in Schleicher County, Texas, and he devised 65 acres of real property located in Kendall County, Texas to David Savanich and Rodney Savanich. Theis left his residual estate to the three of them in equal shares and appointed Tomlinson as independent executor. In subsequent codicils dated August 30, 2001 and January 29, 2002, Theis removed David and Rodney as beneficiaries and named Word B. Sherrill, Jr., independent executor in place of Tomlinson.

From 2003 to 2004, Theis contemplated further modifications to his will. The record reflects that Theis desired to create a trust "for the preservation of ranch life," leaving all of his property now owned "or hereafter transferred or acquired" to the 4H Club of Texas in honor of his family, "who has for five generations ranched in Texas."[2] At the same time, Theis began negotiating the sale of his 4,877-acre Schleicher County ranch for $2.9 million.[3] Eddie Albin, Theis's real estate agent, was the associate broker representing Theis in the deal.

On October 28, 2004, Theis was admitted to Schleicher County Medical Center exhibiting signs of pneumonia. Theis had previously been diagnosed with and treated for chronic obstructive pulmonary disease and other chronic respiratory problems including emphysema, hypoxemia, and bronchitis, as well as coronary artery disease. When he was admitted, his oxygen saturation was poor and he had difficulty breathing. Theis underwent treatment for pneumonia and remained under observation for several days.

The day after he was admitted, Theis executed a durable power of attorney in favor of Eddie Albin; a medical power of attorney in favor of Kim Albin, who was trained as an emergency medical technician; an advance directive to physicians; and a declaration of guardian designating Kim Albin as guardian of his person and Eddie Albin as guardian of his estate.

---

[2] James Kosub, the lawyer who drafted Theis's 2000 will and its subsequent codicils, was also retained to create the trust in favor of the 4H Club providing that Theis's property would continue to be operated as a ranch "for as long as possible" after Theis passed away. However, despite numerous drafts and extensive revisions, the charitable trust was never executed.

[3] The contract provided that Theis would be assigning the property to an intermediary in order to perfect a non-simultaneous, tax-free exchange under section 1031 of the Internal Revenue Code.

3

On November 2, 2004, while he was still hospitalized and undergoing breathing treatments, Theis requested an absentee ballot to vote in the national and local elections. That same day, Theis signed the closing papers for the sale of the Schleicher County ranch.

On the morning of November 3, 2004, Theis met with attorney James Ash to discuss making a new will. During their four-hour conversation, Theis described in detail his family history, the beneficiaries and gifts made under his previous will, the recent sale of his Schleicher County ranch, his plans to buy replacement property for the purpose of avoiding capital gains tax on the ranch sale through a 1031 exchange, an inventory of his real and personal property, and the arrangements Theis wished to be made for his memorial service, including his desire that Jim Reeves's "Adios, Amigo" be played at his funeral.

That afternoon, a new self-proved will was executed. The 2004 will deleted Tomlinson as a beneficiary; established an educational trust of $500,000 in favor of the children of David Savanich, Rodney Savanich, and Eddie and Kim Albin; and bequeathed the residuary estate to Eddie and Kim Albin in equal shares. It appointed Eddie Albin as independent executor. Present at the execution of the 2004 will were three witnesses, a notary, and Ash.

Also on November 3, Theis entered into an oil and gas lease with the buyer of his Schleicher County ranch, retaining the executive rights on a 1,200-acre parcel.

Two days later, November 5, 2004, Theis was discharged from the hospital.

Sixteen months after he executed the 2004 will, Theis died. Soon afterward, in March of 2006, Eddie Albin applied to probate the 2004 will, attaching the original 2004 will to his application. Albin's application was opposed by Tomlinson, David Savanich, and Rodney Savanich,

4

who alleged that the 2004 will was not a valid and lawful will because (1) Theis did not execute the 2004 will with the formalities required by law; (2) Theis lacked testamentary capacity when he executed the 2004 will; (3) the 2004 will was not executed with testamentary intent; and (4) the 2004 will was a result of undue influence.

Tomlinson then filed an application for probate of the 2000 will and issuance of letters testamentary.[4] In his application, Tomlinson declared that the 2000 will was never revoked but that the original 2000 will had been lost or could not be located. Attached to his application was a photocopy of the 2000 will.

Eddie and Kim Albin moved for summary judgment on the basis that the 2004 will was self-proved under the probate code and no further proof of its due execution was necessary.[5] They alleged that there was no evidence that Theis lacked testamentary capacity and that in fact, the evidence conclusively established that Theis did have testamentary capacity when he executed the 2004 will. They further alleged that there was no evidence of undue influence. In support of their motion, they attached extensive affidavit and deposition testimony from Theis's treating physician and nurses, the three attesting witnesses and the notary present at the signing of the 2004 will, the attorney who drafted the 2004 will, Tomlinson, and David and Rodney Savanich.

---

[4] The original application for probate of the 2000 will was filed by Tomlinson, David Savanich, and Rodney Savanich. However, the amended application to probate the 2000 will and the amended opposition to probate the 2004 will omitted David Savanich and Rodney Savanich as parties, and they are not parties to this appeal.

[5] A dispute exists as to whether the Albins filed solely under Texas Rule of Civil Procedure 166a(i) or whether they also filed a traditional motion for summary judgment. We address this issue in the discussion below.

5

In response to the Albins' motion for summary judgment, Tomlinson argued that the 2004 will did not meet the requirements of section 59 of the probate code and was therefore invalid as a matter of law. He also argued that he had raised genuine issues of material fact as to whether the document now offered by the Albins was in fact the document executed by Theis on November 3, 2004. He further alleged that he had produced more than a scintilla of evidence that Theis was not capable of making or executing his will on November 3 because of the seriousness of his medical condition, and that Theis therefore lacked testamentary capacity to execute the 2004 will. Tomlinson did not, however, renew his argument that the 2004 will was the result of undue influence, and he presented no evidence in support of that claim.

The trial court ruled in favor of the Albins on all issues, making the following findings: (1) there was no evidence that the Last Will and Testament signed by Jesse Lawhon Theis on November 3, 2004, is not a valid and lawful will; (2) there was no evidence that the 2004 will failed to comport with the formalities required by law; (3) there was no evidence that the 2004 will was altered or modified after its execution and before its submission to probate; (4) there was no evidence that Theis lacked testamentary capacity at the time the 2004 will was executed; (5) there was no evidence that the 2004 will was the result of undue influence, and furthermore, Tomlinson had conceded this fact; and (6) all prior wills and codicils were revoked as a matter of law by the 2004 will, including the will and codicils offered by the contestant.

On appeal, Tomlinson argues that the trial court erred in granting the Albins' motion for summary judgment, raising points of error with respect to the 2004 will's authenticity, Theis's testamentary capacity, and undue influence.

## DISCUSSION

***Tomlinson's motion to strike appellees' brief***

We address as a preliminary matter Tomlinson's complaint that the Albins' brief violates the rules of appellate procedure for referring to evidence outside the appellate record and including facts that are unsupported by the record.

Page three of the Albins' brief begins, "Although not relevant to the legal analysis before the trial court or this Court, the facts included in the preceding paragraph are taken from Eddie Albin's videotaped deposition testimony, part of which the summary-judgment motion incorporates by reference." In response to Tomlinson's motion to strike their brief, the Albins acknowledge that this Court should ignore the facts included on page three because they were taken from a portion of Eddie Albin's deposition that was not contained in the summary-judgment evidence.

We agree that the background information recited on page three of the Albins' brief is unsupported by the summary-judgment record, and we will therefore strike that page of the Albins' brief. Having reviewed the remainder of the Albins' brief and found it is otherwise in substantial compliance with the rules of appellate procedure, we deny Tomlinson's motion to strike the Albins' brief in its entirety and to order them to rebrief. *See* Tex. R. App. P. 38.9 ("substantial compliance with this rule is sufficient").[6]

---

[6] Our review of the record further reveals that a number of statements in Tomlinson's brief are likewise unsupported by the record and in some instances contradict the summary-judgment evidence that Tomlinson cites in support of his position. Accordingly, we will disregard any and all unsupported and erroneous conclusions that either party invites us to make in determining the issues Tomlinson now raises on appeal.

### Standard of review

We review the trial court's grant of summary judgment de novo. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). Summary judgment is proper only when the movant establishes that there are no genuine issues of material fact to be decided and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a; *see also Spiegel v. KLRU Endowment Fund*, 228 S.W.3d 237, 240 (Tex. App.—Austin 2007, pet. denied). In reviewing the grant of summary judgment, we take as true all evidence favorable to the nonmovant, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in the nonmovant's favor. *Spiegel*, 228 S.W.3d at 240.

A no-evidence summary judgment asserts that there is no evidence of one or more essential elements of claims upon which the opposing party would have the burden of proof at trial. *Duvall v. Texas Dep't of Human Servs.*, 82 S.W.3d 474, 477 (Tex. App.—Austin 2002, no pet.). It is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003).

In reviewing a no-evidence summary judgment, we examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant to determine whether more than a scintilla of evidence was presented on the challenged elements of the nonmovant's claim. *City of Keller v. Wilson*, 168 S.W.3d 802, 825 (Tex. 2005); *Perdue v. Patten Corp.*, 142 S.W.3d 596, 604 (Tex. App.—Austin 2004, no pet.). We affirm a no-evidence summary judgment if, as to an essential element of the claim or defense identified in the motion, "(a) there is a complete absence of evidence of a vital fact, (b) the court is

barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *King Ranch*, 118 S.W.3d at 751.

Such a motion is properly granted if the nonmovant fails to bring forth more than a scintilla of probative evidence to raise a genuine issue of material fact as to an essential element of the nonmovant's claim on which the nonmovant would have the burden of proof at trial. Tex. R. Civ. P. 166a(i); *see Jackson v. Fiesta Mart*, 979 S.W.2d 68, 70-71 (Tex. App.—Austin 1998, no pet.). If the evidence supporting a finding rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions, then more than a scintilla of evidence exists. *Duvall*, 82 S.W.3d at 478. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact, and the legal effect is that there is no evidence. *Jackson*, 979 S.W.2d at 71 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

### Construction of the motion

Before addressing the merits, we must first consider whether the Albins' motion was solely a no-evidence motion, as Tomlinson contends, or if it was also a traditional motion for summary judgment. We hold that the Albins' motion was partly a traditional motion for summary judgment and partly a no-evidence motion for summary judgment.

A no-evidence summary judgment motion must allege that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i). The Albins, as the proponents of the 2004 will, bore

9

the burden of proving that Theis possessed testamentary capacity when the will was executed. *See Croucher v. Croucher*, 660 S.W.2d 55, 57 (Tex. 1983). Therefore, a no-evidence summary judgment could not have been granted on the issue of testamentary capacity.[7]

The Albins point out that while their motion was entitled "Motion for Final Summary Judgment Under Rule 166a(i)," it clearly raised both no-evidence and traditional bases entitling them to summary judgment. They assert that their motion properly identified the specific grounds for summary judgment by stating that "the evidence conclusively establishes that Mr. Theis did have testamentary capacity when he executed the Will on November 3, 2004," and that this was sufficient to give Tomlinson fair notice of the grounds sought. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339 (Tex. 1993) (motion for summary judgment must state specific grounds therefore); *see also Dear v. City of Irving*, 902 S.W.2d 731, 734 (Tex. App.—Austin 1995, writ denied) (grounds articulated in motion for summary judgment are sufficient if they give nonmovant fair notice of claim being asserted). They further allege that Tomlinson had actual notice that their motion was based on both no-evidence and traditional bases because his response to their motion states, "Applicants have actually attempted to move on a traditional summary judgment."

Our de novo review of the Albins' motion reveals that although it was labeled a no-evidence motion, it was in fact a traditional motion for summary judgment on the issue of testamentary capacity. In substance, it recognized that the Albins bore the burden of proof on the

---

[7] Tomlinson raises this argument for the first time on appeal. In his response to the Albins' motion for summary judgment, Tomlinson argued only that the Albins bore the burden of proving that the 2004 will was validly executed. He did not argue that the Albins also bore the burden of proof on the issue of testamentary capacity, thereby precluding them from moving for no-evidence summary judgment on that issue.

issue of testamentary capacity, included evidence to conclusively establish that Theis had testamentary capacity when the 2004 will was executed, and identified the appropriate standard of review for determining whether Theis had capacity. *See Rodgers v. Weatherspoon*, 141 S.W.3d 342, 344 (Tex. App.—Dallas 2004, no pet.) (explaining that court should determine standard of proof on summary-judgment motion after considering substance, rather than categorize motion strictly by form or title).

"When a party has mistakenly designated any plea or pleading, the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated." Tex. R. Civ. P. 71; *see Binur v. Jacobo*, 135 S.W.3d 646, 651 (Tex. 2004). The supreme court has noted that although it is good practice to use headings "to clearly delineate the basis for summary judgment under subsection (a) or (b) from the basis for summary judgment under subsection (i)," the rule does not require it. *Binur*, 135 S.W.3d at 651. We will therefore treat the Albins' motion as a hybrid motion where, on the issue of testamentary capacity, they met the higher summary-judgment burden under 166a by conclusively establishing that there existed no genuine issue of material fact.

### Alteration or modification of 2004 will

Tomlinson's first issue concerns the authenticity of the 2004 will offered for probate by the Albins.[8] He argues that the trial court erred in granting summary judgment because he had

___

[8] In response to the Albins' motion for summary judgment, Tomlinson had challenged both the 2004 will's authenticity and its compliance with section 59 of the probate code. On appeal, he no longer contests whether the 2004 will complies with the probate code on its face, but argues only that the will is "invalid" because there is more than a scintilla of evidence that the 2004 will is a forgery. Therefore, we understand his only challenge to the 2004 will's "validity" to be his assertion that "the document Albin submitted for probate as Theis's Last Will and Testament of November 3, 2004, is not the same document that Theis signed while he was in the hospital."

11

raised a fact issue concerning whether the instrument purporting to be the 2004 will was in fact the will that Theis executed on November 3, 2004, and because he had shown that Eddie Albin had motive and opportunity to modify the 2004 will after its execution.

The act of forgery is defined as altering, making, completing, executing, or authenticating a writing so that it purports to be the act of another who did not authorize the act. *See Parker v. State*, 985 S.W.2d 460, 463 (Tex. Crim. App. 1999); *In re Estate of Flores*, 76 S.W.3d 624, 630 (Tex. App.—Corpus Christi 2002, no pet.). There is no dispute that the 2004 will offered by the Albins was self-proved under the probate code. Therefore, no further proof of its due execution was required, *see* Tex. Prob. Code Ann. § 84(a) (West 2003), and Tomlinson bore the burden of proof on the issue of forgery. *See Green v. Hewett*, 54 Tex. Civ. App. 534, 118 S.W. 170 (1909, no writ). To defeat the Albins' no-evidence motion, Tomlinson had to produce summary-judgment evidence raising a genuine issue of material fact in support of his claim that the 2004 will offered for probate had been forged. *See* Tex. R. Civ. P. 166a(i).

---

Tomlinson also complains within his challenge to the "validity" of the 2004 will that the Albins did not attach a copy of the 2004 will to their motion for summary judgment. He cites *Hudson v. Hopkins*, 799 S.W.2d 783 (Tex. App.—Tyler 1990, no pet.) for the proposition that where parties dispute the validity of a will not admitted to probate, a copy of the will should be attached to the motion for summary judgment as evidence. However, the *Hudson* court actually held that because a copy of the contested will in that case was on file with the trial court at the time of the summary-judgment hearing, the trial court could properly use the will as evidence for the summary judgment, and the movant was *not* required to attach a copy of the will to the motion for summary judgment. *Hudson*, 799 S.W.2d at 785. In this case, both parties have stipulated that the 2004 will was filed with Eddie Albin's application in March of 2006, and therefore it need not have been separately attached to the Albins' motion for summary judgment.

Tomlinson asserts that the summary-judgment proof he attached to his response raises a fact issue as to whether the document purporting to be the 2004 will is in fact the same document that Theis executed on November 3, 2004.

As evidence that "[s]uspicious circumstances abound the execution of [the 2004] will," Tomlinson cites Eddie Albin's statement that Albin kept the original of the 2004 will after its execution on the afternoon of November 3, 2004, until he placed it in a safety deposit box the next day. Tomlinson also attached testimony from Jim Ash, the lawyer who drafted the 2004 will and was present at its execution. Ash testified that he was first contacted by Theis from Eddie Albin's cell phone. He also testified at length as to his November 3, 2004 conversation with Theis concerning how Theis wished to devise his property and how the contents of the 2004 will reflected those wishes. He further stated that the pages of the original 2004 will were not stapled together, that he did not have Theis initial each page of the will, and that he delivered the original 2004 will to Eddie Albin after it was executed.[9] Finally, Tomlinson points to the testimony of Cheryl Forlano,

---

[9] Tomlinson incorrectly cites the record as indicating that Ash delivered the original document to Albin, but that Ash "did not maintain a copy" himself. In fact, the undisputed summary-judgment evidence demonstrates that Ash kept the electronic version of the will on his laptop computer, and he delivered the signed original to Eddie Albin—at Theis's request—for Albin to place in a safety deposit box. Nor did Ash testify that he drafted the will on Albin's computer, as Tomlinson claims; rather, Ash stated that he drafted the will on his own laptop computer in Albin's kitchen after meeting with Theis at the hospital and then printed the will for signature on Albin's printer. These facts do not support Tomlinson's assertion that "therefore any modifications by Mr. Albin would have been in the exact same type as the original."

13

one of the three attesting witnesses to the 2004 will, who stated that she thought the will had been stapled together and that Theis had initialed it in a few places.[10]

---

[10] Forlano testified as follows:

[On cross-examination]

Q.  And then after the papers were arranged, is that when [Ash] handed the document to Mr. Theis for him to page through?

A.  Yeah.  When he was ready, he -- he handed [the will] to Jesse, and Jesse looked through it, initialed a few places, and I believe he signed it at that time.  And then he handed it -- set it back on the table and showed us all where to sign.  And we filed through and signed where we were supposed to.

Q.  Do you remember whether or not the papers that composed the will that -- that you signed were stapled together?

A.  Yes, they were.

Q.  And were they stapled with a single staple?

A.  I can't say.  Probably, but...

. . .

[On recross-examination]

Q.  Mrs. Forlano, you -- you don't know, do you, whether or not the first twelve pages of that instrument were attached to the last three pages on the day that Mr. Theis signed it, do you?

A.  Well, I know that when we -- when we signed it, they were -- you know, the whole will was stapled together, but I mean I couldn't verify that --

. . .

Q.  And your initial recollection when you were asked about whether or not Mr. Theis initialed pages was that he had in two or three places; is that correct?

On this record, the trial court found that there is "no evidence that the 2004 will was altered or modified after being executed by the Testator and before being submitted for probate." We agree.

Our review of the entire record shows that Tomlinson's claim that "Eddie Albin had motive and opportunity to tamper with the will before submitting it to probate" is based on nothing more than Tomlinson's subjective beliefs and suspicion. The testimony Tomlinson cites indicating that Ash drafted the will in the Albins' kitchen, printed the will using the Albins' printer, and was initially contacted by Theis on Eddie Albin's cell phone is not evidence that raises genuine issues of material fact regarding the authenticity of the will the Albins submitted for probate.[11] At most, it amounts to a "mere surmise or suspicion" of forgery and does not constitute more than a scintilla of evidence sufficient to create a fact issue. *See Jackson*, 979 S.W.2d at 71.

Nor is the discrepancy between Ash's and Forlano's testimony concerning whether the 2004 will had been stapled and initialed sufficient to raise a genuine issue of material fact. Forlano's statements do not support Tomlinson's assertion that she "unequivocally testified that the

---

    A.      That is correct. I'm trying to remember. I'm trying to think about what went on that day. I remember him paging through it. I believe he initialed it in a couple of places, but I cannot say for certain.

    . . .

[11] Tomlinson includes additional factual allegations in his brief that we need not consider, either because they are not supported by the record or contradict the evidence in the summary-judgment record. *See* Tex. R. App. P. 38.1(f). Among these are assertions that "Theis's long-time acquaintances had never heard of Eddie Albin," that Tomlinson was Theis's "lifelong friend and mentee," that Eddie Albin "presumably earned less than a 1% commission" on the sale of Theis's Schleicher County ranch, and that Ash prepared the 2004 will "using software both he and Albin had access to."

original document which she signed and which was initialed and signed by Jesse Theis, was stapled together." Rather, Forlano testified that she had no way of knowing whether the pages submitted by the Albins as Theis's 2004 will were the same pages that accompanied the document she had witnessed on November 3, 2004, and that she could "not say for certain" whether Theis had in fact initialed the will.

In claims or defenses supported only by meager circumstantial evidence, the evidence does not rise above a scintilla if the fact-finder would have to guess whether a vital fact exists. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). When the circumstances are equally consistent with either of two facts, neither fact may be inferred. *City of Keller*, 168 S.W.3d at 813. In such cases, we must view each piece of circumstantial evidence, not in isolation, but in light of all the known circumstances. *Id.* at 813-14. When the circumstantial evidence of a vital fact is meager, "a reviewing court must consider not just favorable but all the circumstantial evidence, and competing inferences as well." *Id.* at 815.

For the fact-finder to arrive at the conclusion that the 2004 will offered by the Albins is a forgery, he would have to guess that the Albins removed the 12 pages comprising the testamentary provisions of the will, made changes to the bequests that Theis had originally intended to make under that instrument, and then reattached the forged pages to the pages that Theis and the other witnesses had signed. There is no evidence in the record that would support such a hypothesis. Furthermore, Forlano's remarks are equally consistent with a conclusion that she could not in fact remember whether the 2004 will had been initialed and incorrectly believed it to have been stapled as with an inference that the Albins had committed forgery. The court had no evidence before it

16

suggesting that the Albins had committed any wrongdoing or that the Albins had motive to alter the will that Theis executed on November 3, 2004.

On the contrary, Ash's uncontroverted testimony established that the property dispositions Theis expressed to him on November 3 were accurately reflected in the 2004 will that the Albins offered for probate. Ash testified that he met with Theis for several hours on the morning of November 3, and that during that conversation, Theis said that he wanted to give his property to Eddie and Kim Albin and name Eddie Albin as administrator and trustee in his will. Ash also testified that Theis wanted to create an educational trust of $500,000 for the Savanich and Albin children. These are the very same testamentary gifts contained in the instrument offered for probate by the Albins.

In light of these circumstances, Forlano's testimony cannot support a reasonable inference that the Albins altered or modified the original 2004 will because it does not rise above a scintilla. Tomlinson, by piecing together what he personally views as "suspicious circumstances" before and after the execution of the 2004 will, has not met his burden of bringing forward evidence that raises a genuine issue of material fact. As the supreme court has declared, "some suspicion linked to other suspicion produces only more suspicion, which is not the same as some evidence." *King Ranch*, 118 S.W.3d at 755 (quoting *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 927 (Tex. 1993)).

Therefore, even after viewing all of the evidence in the record in the light most favorable to Tomlinson, we are not convinced that his assertion of forgery is based on anything more than conjecture, and we hold that the trial court did not err in granting summary judgment on this ground.

17

*Testamentary capacity*

In his second issue, Tomlinson argues that the trial court erred in granting summary judgment on the ground that Theis had testamentary capacity when he executed the 2004 will. We consider whether the trial court erred in granting the Albins' motion on this issue in light of our de novo standard of review. Essentially, the question we must decide is whether the trial court properly recognized that the Albins' motion was in fact a traditional summary-judgment motion on this issue, although the judgment states, "There is no evidence that at the time of the execution of the will that Mr. Theis lacked testamentary capacity." We hold that summary judgment was properly granted because, as to Theis's testamentary capacity, the Albins established that there were no genuine issues of material fact to be decided and that they were entitled to judgment as a matter of law.

Tomlinson brings several challenges to the trial court's finding that there was no evidence that Theis lacked testamentary capacity when he executed the 2004 will. Specifically, he alleges that (1) no-evidence summary judgment was improper because the Albins had the burden of proof on the issue of testamentary capacity; (2) the evidence the Albins offered could not be considered in a no-evidence motion; (3) testamentary capacity is not an issue that can be conclusively established as a matter of law because opinion testimony cannot establish a material fact; and (4) more than a scintilla of evidence exists regarding Theis's lack of testamentary capacity.

However, the only argument Tomlinson raised prior to this appeal was his assertion that he had presented more than a scintilla of evidence creating a genuine issue of material fact that Theis lacked testamentary capacity. The record demonstrates that Tomlinson failed to present all but this argument to the trial court, and therefore his other arguments are waived for the purposes

18

of appeal. *See Perez v. Blue Cross Blue Shield of Tex., Inc.*, 127 S.W.3d 826, 835 (Tex. App.—Austin 2003, pet. denied).

The Albins' motion aptly recognized that they bore the burden of proof on this issue, and they attached to their motion extensive evidence that Theis had testamentary capacity in order to establish that they were entitled to judgment as a matter of law.

Dr. James Lucas, Theis's treating physician in 2004 and 2005, testified that when Theis was admitted to the hospital on October 28, 2004, his neurological condition was evaluated and he was found to be alert and oriented when he entered the hospital. Dr. Lucas stated that, for the duration of his hospital stay from October 28 to November 5, 2004, Theis was never found to be disoriented and that Theis never exhibited dementia, a lack of familiarity with his surroundings, impaired judgment, signs of depression, or a decline in cognitive skills; rather, Theis appeared to be mentally alert at all times. Dr. Lucas also testified that, as a sufferer of emphysema and chronic lung disease, Theis had become acclimated to functioning with less oxygen, and that on November 3, 2004, Theis's condition "had improved considerably." He testified that Theis's oxygen saturation as of November 3 was 82 percent, which "is considered good, especially in Jesse's case."

Cheryl Forlano, a nurse at Schleicher County Medical Center who observed Theis and regularly checked his status, testified that Theis was alert and oriented at all times during his 2004 hospitalization. She further testified in her capacity as an attesting witness that on November 3, 2004, Theis was mentally alert and seemed to fully understand that he was executing his will.

The two other attesting witnesses, Jeanne Snelson and Helen Brame, and the notary present at the execution of the 2004 will, Vera Bradshaw, all stated that Theis was mentally alert and appeared competent to execute his will on November 3.

James Ash, the attorney who prepared the 2004 will, testified as to Theis's behavior and alertness during their conversation when they discussed Theis's property and affairs and during the actual execution of the 2004 will. Ash noted that while he was with Theis in the hospital room on November 3, Theis's ranch foreman came to ask Theis for directions concerning the management of the ranch, and Ash stated that he believed Theis was still conducting the business of the ranch from his hospital room. Ash testified that, during their conversation on the morning of November 3, Theis discussed his family history, his assets, the nature of his estate, and his testamentary wishes for the disposition of his real and personal property.[12] Ash recalled that during the afternoon when the 2004 will was executed, Theis appeared to be in good health and was sitting upright and talking, Theis recognized each of the witnesses and engaged in conversation with them, and Theis stayed focused on the conversation the entire time and remained interested in what was going on.

---

[12] Ash's testimony as to his conversation with Theis was extensive. He recalled that, after visiting with Theis about the engagement letter to make sure that Theis understood Ash was representing him, he and Theis spent the next four hours discussing matters related to Theis's new will. He testified at length as to Theis's statements regarding his adopted family, including the Theis family history going back to the 1860s; the specific gifts Theis wished to make to the Savanich and Albin children, as well as his niece in Florida (which, later in the conversation, he decided to revoke in favor of creating an educational trust for the children, excluding his niece); Theis's failed attempt to set up a charitable trust in favor of the 4H Club aimed at carrying on the ranching tradition of his family; and the 1031 exchange he was in the process of perfecting to avoid capital gains tax on the sale of his Schleicher County ranch.

Ash further testified that, in the presence of the witnesses, he asked Theis the following questions: Is anyone forcing you to do this will? Does the will do exactly what you want to do? Could anyone force you to sign a will you do not want to sign? Do you still manage your affairs and your property? Are you aware of the objects of your estate and the people who might inherit under your will? Ash then stated, "With regard to the first question, anyone -- is anyone forcing you to do this will, he responded no. Does this will do exactly what you want to do, his response was yes. Could anyone force you to sign a will you do not want to sign, he responded no. You still manage your affairs and your property, he said yes. And are you aware of the -- the persons, the objects that would inherit from you, he said yes."

The Albins also attached to their motion Mark Tomlinson's deposition, wherein he stated that he was aware Theis had entered into a contract to sell his ranch in Schleicher County, he had no objection to that sale, and he felt Theis had the mental capacity to enter into that agreement.

This evidence supports a conclusion that on November 3, 2004, Theis had testamentary capacity because he possessed sufficient mental faculties to understand he was making a will, the effect of making a will, the general nature and extent of his property, and the natural objects of his bounty, and he possessed the ability to consider the business to be transacted and to form a reasonable judgment about it. *See Reding v. Eaton*, 551 S.W.2d 491, 492 (Tex. Civ. App.—Austin 1977, no writ); *see also Bracewell v. Bracewell*, 20 S.W.3d 14, 19 (Tex. App.—Houston [14th Dist.] 2000, pet. denied); *Chambers v. Chambers*, 542 S.W.2d 901, 906 (Tex. Civ. App.—Dallas 1976, no writ).

21

In response to the Albins' motion for summary judgment, Tomlinson presented testimony from Carolyn Savanich, David Savanich's wife, who stated that following Theis's discharge from the hospital, "something was not right with Jesse that week." She said that Theis called her on November 8 and told her to "send David now." She responded that David was at work, to which Theis said, "You don't understand, Carolyn. I sold the ranch. I signed the paper." And further, "I sold the ranch. They brought me more papers to sign. I'm afraid I signed them. Everything is furry, everything is blurry, and I am all confused. Send someone now."

Tomlinson also submitted an affidavit from Dr. Michael R. Arambula, M.D., Pharm.D., and certified forensic psychiatrist. Dr. Arambula testified that, after reviewing Theis's medical records, admission summaries, and discharge summaries dating back to 2003, he was of the opinion that Theis's cognitive function was impaired on November 3, 2004. In his report, he concluded that Theis "was not compliant with his treatment regimen even if it jeopardized his health and convalescence." His conclusions before the trial court are as follows:

> From a mental health perspective, the information in Mr. Theis' medical records infer how impaired his cognitive function was. Records repeatedly describe that he was unable to follow basic treatment recommendations which would have alleviated his uncomfortable and sometimes dangerous symptoms. His actions – or lack of – call attention to the likelihood that he could not attend to, retain, and put into use the information which would have diminished his distress. The ability to do something – by cause and effect – in order to alleviate physical discomfort is one of the most basic cognitive tasks an individual can exercise. Mr. Theis' apathetic responsiveness therefore implies that he had significant Executive Dysfunction. Executive Function is akin to Frontal Lobe Function in the brain. Therein lays the heart of decision-making. Amidst this backdrop of significantly compromised Frontal Lobe function, I therefore do not believe that Mr. Theis would have possessed sufficient cognitive skills coincident with testamentary capacity, or to resist the coercive influence of others who did not have his best interests at heart.

The Albins objected to Dr. Arambula's report, asserting that it was not competent summary-judgment proof because it was simply a conclusory affidavit lacking the essential requirements necessary to be admissible evidence. Specifically, they complained that his affidavit failed to set forth such facts as would be admissible in evidence to affirmatively show that the affidavit is competent to the matters stated therein.

The trial court granted the Albins' summary judgment motion on the ground that Theis had testamentary capacity when he executed the 2004 will.

In reviewing whether the trial court erred in determining that Theis possessed testamentary capacity, our inquiry is focused on "the condition of the testator's mind on the day the will was executed." *See Lee v. Lee*, 424 S.W.2d 609, 611 (Tex. 1968). If there is no direct testimony of acts, demeanor, or condition indicating that the testator lacked testamentary capacity on the date of execution, the testator's mental condition on that date may be determined from lay opinion testimony based upon the witnesses' observations of testator's conduct either prior or subsequent to the execution. *Id.* However, that evidence has probative force only if some evidence exists demonstrating that the condition persisted and had some probability of being the same condition that existed at the time the will was made. *Id.* Thus, to successfully challenge a testator's mental capacity with circumstantial evidence from time periods other than the day on which the will was executed, the will contestants must establish that (1) the evidence offered indicates a lack of testamentary capacity; (2) the evidence is probative of the testator's capacity (or lack thereof) on the day the will was executed; and (3) the evidence provided is of a satisfactory and convincing character, because probate will not be set aside on the basis of evidence that creates only a suspicion

23

of mental incapacity.  *See Horton v. Horton*, 965 S.W.2d 78, 85 (Tex. App.—Fort Worth 1998, no pet.).

Here, the Albins did present direct testimony of Theis's acts, demeanor, and condition on the day his will was executed.  Dr. Lucas, Theis's treating physician, testified that Theis's neurological condition was examined, and he determined that Theis did not suffer from any disorientation or confusion on the day he executed his will or at any other time during his hospitalization.  He also explained that, in spite of Theis's breathing difficulties when Theis was first admitted to the hospital, his oxygen saturation was much improved by November 3.  Nurse Forlano's testimony also indicated that Theis was mentally alert and aware of what was going on while he was in the hospital, as did the testimony of the other witnesses to the execution of the 2004 will.  James Ash testified that on the morning he met with Theis to discuss drafting a new will, Theis appeared to be healthy and was able to discuss with him the nature and extent of his estate, identify all of his surviving relatives, and indicate who stood to inherit from him.

Furthermore, Ash stated that when it came time to execute the will, Theis was alert and conscientious of what was taking place, and he recognized each of the witnesses and engaged in conversation with them.  Theis was also apparently competent to continue managing his business affairs and to execute several legal documents on or around the day he executed the 2004 will—including the $2.9 million real estate contract, which Tomlinson agreed Theis was mentally competent to execute on November 2, the day before Theis executed the 2004 will.

Having failed to rebut the testimony of Dr. Lucas, James Ash, or any of the disinterested witnesses to the signing of the 2004 will, Tomlinson instead cites to the testimony of

24

Carolyn Savanich, who was not present in the hospital when the will was executed. She testified that, according to a phone conversation she had with Theis five days after the will's execution, Theis was "confused" about what he had done. Theis purportedly told Carolyn that he "sold the ranch" and "signed the paper," apparently referring to the real estate deal that Theis entered into on November 2. Having already conceded that Theis had the capacity to execute the real estate contract, however, it is unclear how Carolyn's statement is evidence indicating that Theis subsequently lacked testamentary capacity when he executed his will the day after the ranch sale. Moreover, five days had elapsed between the time that Theis contacted Ash and asked him to draw up a new will and the time at which Theis told Carolyn, "They brought me more papers to sign. I'm afraid I signed them." Tomlinson did not establish how this latter statement is probative of Theis's capacity when he executed the will five days earlier.

Even taking Carolyn's testimony as true and indulging every reasonable inference that can be drawn from Theis's statements to her, at most we can conclude that on November 8, Theis was confused or mistaken about what he had done prior to that date. This is not evidence, however, that Theis lacked testamentary capacity on November 3, and if he did indeed suffer from any later bouts of confusion, he appears to have executed the 2004 will during an episode of clarity. "Even people of admitted unsound mind may have lucid intervals, and in such lucid interval be possessed of testamentary capacity." *Estate of Grey*, 279 S.W.2d 936, 939 (Tex. Civ. App.—El Paso 1955, writ ref'd n.r.e.).

The trial court also reviewed the affidavit of Dr. Arambula, which Tomlinson claims is evidence that Theis lacked testamentary capacity when he executed the 2004 will. The court

examined Dr. Arambula's affidavit and determined that "Dr. Arambula's opinions are merely conclusions lacking in essential requirements necessary to be admissible evidence."

A conclusory statement of an expert witness is insufficient to create a question of fact to defeat summary judgment. *McIntyre v. Ramirez*, 109 S.W.3d 741, 749 (Tex. 2003). Indeed, Dr. Arambula's affidavit draws a conclusion that Theis had "significant [e]xecutive [d]ysfunction," but fails to establish which records "repeatedly describe" Theis's inability to follow basic treatment recommendations, which action or inaction by Theis calls attention to his impaired cognitive function, and upon what factual basis he determined that Theis exhibited "apathetic responsiveness."

"If an expert's opinion is based on certain assumptions about the facts, we cannot disregard evidence showing those assumptions were unfounded." *City of Keller*, 168 S.W.3d at 813. Evidence that fails to meet reliability standards is rendered not only inadmissible but incompetent as well. *Id.* Thus, "evidence that might be 'some evidence' when considered in isolation is nevertheless rendered 'no evidence' when contrary evidence shows it to be incompetent" and such contrary evidence cannot be disregarded. *Id.*

In our review of the record, we have found only the following evidence upon which we could assume Dr. Arambula's conclusions are based: (1) Dr. Lucas's testimony that when Theis received breathing treatments "at 2 liters a minute through nasal prongs," sometimes Theis "would leave [the nasal prongs] on and sometimes he wouldn't. And when he wouldn't, the nurses would go in, get after him, put it on. He'd take [them] off during the night, sometimes during the day. He just didn't like to wear [the nasal prongs]"; (2) testimony from nurse Cheryl Forlano, who stated that Theis "was somewhat noncompliant about his health care, so he had -- you know, he was frequently

26

in the hospital because he smoked"; and (3) the affidavit of Word Sherrill, Jr., a real estate broker who had done business with Theis, who stated that Theis "did not take good care of himself."

To hold that this evidence is sufficient to raise a fact question would lead to the absurd result of calling into question the testamentary capacity of anyone who acts in contravention to his doctor's orders. The fact that Theis continued to smoke, despite suffering from chronic pulmonary disease and emphysema, or that he removed his nasal prongs because he did not like to wear them, does not support a conclusion that Theis suffered significant executive dysfunction, particularly in light of the evidence presented by the Albins showing that Theis did in fact have testamentary capacity when he executed the 2004 will. The legal effect of Dr. Arambula's affidavit is that it constituted no evidence of Theis's lack of testamentary capacity.

We hold that the trial court did not err in granting summary judgment on the ground that Theis had testamentary capacity when he executed his will on November 3, 2004.

### Undue influence

In his final issue, Tomlinson argues that the no-evidence motion cannot support the judgment as a matter of law because it fails to list any element of undue influence on which the Albins contend there is no evidence. Tomlinson did not present this issue to the trial court for ruling, but instead he raises it for the first time on appeal.

When a summary judgment is attacked as lacking specificity, a special exception is required. *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 784 (Tex. App.—Houston [14th Dist.] 2004, no pet.); *see also McConnell*, 858 S.W.2d at 342 (stating in dictum that "an exception is required should a non-movant wish to complain on appeal that the grounds relied on

27

by the movant were unclear or ambiguous"). The excepting party must obtain a ruling on the special exception to preserve the issue for appeal. *Franco*, 154 S.W.3d at 784. Because Tomlinson failed to do so, we cannot consider his complaint on appeal as grounds for reversal. *See id.* at 784-85. Furthermore, Tomlinson presented no evidence that the 2004 will was the result of undue influence, and in fact he conceded that Theis was not unduly influenced in executing the 2004 will before the trial court. We therefore hold that summary judgment was properly granted on the issue of undue influence.

## CONCLUSION

Because Tomlinson failed to raise a genuine issue of material fact that the 2004 will was a forgery, that Theis lacked testamentary capacity when he executed the 2004 will, or that the 2004 will was the result of undue influence, the trial court did not err in granting summary judgment in favor of the Albins. We therefore affirm the judgment of the trial court.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed:   January 18, 2008